**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DASHAWN Z. YOUNG,**

**Plaintiff,**

**v.**

**LOUANNA S. GLADMAN,[1] et al.,**

**Defendants.**

**Case No. 1:25-cv-860**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Litkovitz**

**OPINION AND ORDER**

On May 5, 2026, Magistrate Judge Litkovitz issued a Report and Recommendation (R&R, Doc. 4), recommending that the Court (1) dismiss all official-capacity claims asserted against Defendants, (2) dismiss Defendants Osbourne, Jewell, and Justice as parties in this matter, and (3) permit Plaintiff's remaining claims to proceed. Plaintiff had until May 19, 2026, to object, but has not done so. Finding no clear error in the Magistrate Judge's reasoning, the Court **ADOPTS** the R&R in its entirety.

**BACKGROUND[2]**

Plaintiff DaShawn Young, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this pro se civil rights action against Defendants Louanna Gladman, Ryan Nolan, Bertha Goodman, Aaron Stidham, Correctional Officer Hale,

---

[1] The docket names Defendant Gladman as "Lovanna S. Gladman." Because that appears to be a misspelling, the Court elects to use "Louanna" instead.

[2] The Court recites the relevant background based on the allegations in Young's complaint. But the Court reminds the reader that, at this stage of the proceedings, they are just that—allegations.

Chase Conley, Carl Justice, William Jewell, Mental Health Provider Roe, RN Osbourne, and LPN David Conley, under 42 U.S.C. § 1983. (Doc. 4, #97). Young alleges that Defendants acted with deliberate indifference to his medical needs and conditions of confinement. (*Id.* (citing Compl., Doc. 3)).

On February 7, 2025, Young returned to SOCF from The Ohio State University Hospital, where he was tragically diagnosed with kidney cancer. (*Id.* at #99). During his stay, he underwent surgery to have a tumor removed from his left kidney. (*Id.*). But upon his return, prison officials allegedly placed Young "in a condemned cell with no heat, no running water, and a broken toilet." (*Id.*). When Young complained about the conditions of his cell, the on-duty officer "told him that it would take a few days to relocate him to another cell." (*Id.*). Later that night, Young asked Defendant Osbourne, a registered nurse, for pain medication. (*Id.*). But Osbourne refused and told Young that he would need to see a doctor before receiving any medication. (*Id.*).

Two days later, Young started a hunger strike "because he felt ignored by prison staff." (*Id.*). Defendant David Conley, a nurse practitioner, eventually saw Young, but only prescribed him Tylenol for post-surgery pain. (*Id.* at #99–100). Conley allegedly knew of Young's surgery and that Young required special, urologist-ordered treatment, but nonetheless ignored those needs. (*Id.*). Similarly, other treating nurses would often say that they "forgot" Young needed pain medication. (*Id.*).

Young's health began to deteriorate during the hunger strike, and he was placed on suicide watch. (*Id.*). But instead of giving Young the medication the

urologist prescribed, Conley focused on trying to get Young off suicide watch. (*Id.*). Conley allegedly told Young, "I don't care [about you], you're only hurting yourself, not me." (*Id.*). And when Young asked Defendant Goodman, a medical administrator, why prison staff was not adhering to the urologist's prescribed treatment, she became defensive and told Young to "accept what we have or don't, it's your choice." (*Id.*). According to Young, Goodman never reviewed his medical file and did not intervene as his condition grew more severe. (*Id.*).

All told, Young's hunger strike went on for thirteen days. (*Id.*). But "he received enough Tylenol for only three days, and he was removed from the infirmary and placed in a restricted housing unit." (*Id.*). Young says that he was on "constant watch" in the unit. (*Id.*).

Eventually, Officer Stidham, in an effort to get Young off suicide watch, moved him to "cell 41"—a cell with hazardous conditions. (*Id.*). There, Young was allegedly exposed to "residual pepper spray," which became reactivated by moisture on the floor. (*Id.*). That exposure caused Young to "cough and choke." (*Id.*). What's more, the cell was "covered in feces, blood, semen, spit, urine, and food." (*Id.*). But "[p]rison officials rejected [Young's] request to clean the cell." (*Id.*).

The next day, prison officials placed Young on "close watch" status. (*Id.*). Again feeling "ignored," Young "became distraught and began to harm himself by tearing out his abdominal stitches from his kidney surgery." (*Id.*). But Officer Chase Conley paid no mind and declined to alert other prison staff while Young "smeared blood on his chest and face." (*Id.*). Officers Stidham and Hale similarly ignored Young as he

bled from his self-inflicted wounds. (*Id.* at #100–01). Officer Nolan, the restrictive housing unit manager, saw Young harming himself but did nothing to intervene. (*Id.* at #101).

Defendant Roe, a mental health provider at SOCF, evaluated Young on March 12, 2025. (*Id.*). Young showed Roe his blood-stained hands and told him that "he was still feeling suicidal." (*Id.*). Roe had Young handcuffed so that he could see Young's abdomen wound. (*Id.*). But even after examining it, Roe declined to call medical professionals to restitch it. (*Id.*).

After that, Young was placed back on suicide watch. (*See id.*). Two weeks in, Young harmed himself again, apparently because he did not have access to SOCF's grievance system. (*Id.*). At some point, Young was able to meet with a social worker, with whom he filed "an informal grievance" about Chase Conley, Stidham, and Hale's failure to intervene during Young's self-harm episode. (*Id.*). But he received no response. (*Id.*). And when he asked the social worker whether he could be transferred to a residential treatment unit, the social worker told Young that that was "impossible" because Young was not "crazy." (*Id.*).

A few months passed. (*Id.*). In the interim, Young was unable to get a complete mental health assessment because Defendant Gladman, a mental health administrator, would not conduct the evaluation, despite her knowledge of Young's cancer, hunger strike, and history of self-harm. (*Id.*).

In the end, Young was confined to cell 41 for a period of over 100 days. (*Id.*). He had no shower, toiletries, or cleaning supplies, and received no medical attention

for his abdominal wound. (*Id.*). The cell's lights remained on during his stay, which disrupted his sleep and further undermined his mental health. (*Id.*). Officers Carl Justice and William Jewell were assigned to Young's housing unit during this time. (*Id.*).

In an effort to get transferred out of cell 41, Young started a second hunger strike on June 23, 2025. (*Id.*). This strike lasted twenty-one days, further injuring his kidneys. (*Id.* at #102). Eventually, a mental health administrator identified as "Pennington" screened Young to start the process of placing him into a residential housing unit. (*Id.*). Once that was complete, Gladman was required to conduct a "biop" to complete the process, but refused. (*Id.*).

After that, prison officials again placed Young into restrictive housing, where he was again denied access to a shower and toiletries. (*Id.*). In August 2025, the prison removed Young from suicide watch and placed him into the general prison population—an outcome Young attributes to the grievance he filed. (*Id.*). He asserts that he is now on a treatment plan, but he does not know the details. (*Id.*).

Based on those allegations, Young seeks monetary damages and injunctive relief. (*Id.*).

Reviewing Young's complaint under her screening authority, (*see id.* at #97–98), the Magistrate Judge concluded that Young successfully states the following claims: (1) an Eighth Amendment deliberate-indifference claim against David Conley and Goodman for failing to provide the post-operation, urologist-prescribed treatment; (2) an Eighth Amendment deliberate-indifference claim against Chase

Conley, Stidham, Hale, Nolan, Roe, and Gladman for ignoring the mental health issues that led to Young's self-harm injuries; (3) an Eighth Amendment conditions-of-confinement claim against Chase Conley, Stidham, Hale, Nolan, Roe, and Gladman for keeping Young in cell 41 for over 100 days; and (4) a state-law claim for intentional infliction of emotional distress (IIED) against Chase Conley, David Conley, Goodman, Stidham, Hale, Nolan, Roe, and Gladman, (*id.* at #102).

But, to the extent that Young is asserting official-capacity claims for damages against any Defendant, the Magistrate Judge recommends that all such claims be dismissed on sovereign-immunity grounds. (*Id.* at #103–04). She further recommends that the Court dismiss Osbourne because she lacked a "sufficiently culpable state of mind" necessary to satisfy the "subjective component of a medical deliberate indifference claim." (*Id.* at #105). Likewise, the Magistrate Judge recommends that the Court dismiss Jewell and Justice because, although those Defendants worked in Young's housing unit while Young resided in cell 41, Young does not allege facts giving rise to a plausible inference that either Defendant "was personally involved in the conduct that forms the basis of [the] complaint." (*Id.* (citations omitted)). Finally, the Magistrate Judge recommends that the Court certify that any appeal of an order adopting the R&R would not be taken in good faith, thus precluding an in forma pauperis (IFP) appeal to the Sixth Circuit absent a successful IFP motion in that court. (*Id.* at #106–07).

The R&R informed Young that he had fourteen days to file specific objections to the Magistrate Judge's recommendations. (*Id.* at #107). The R&R further informed

Young that failure to object might result in forfeiture of his appeal rights. (*Id.* (citations omitted)). But the deadline for objections has passed, and Young has filed none. So the matter is ripe for review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). For any unobjected portions of an R&R, by contrast, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## LAW AND ANALYSIS

Young has not objected to the R&R, so the Court reviews it for clear error. *Id.* The Court finds none.

Start with Young's official-capacity claims for damages. To the extent Young asserts such claims, the Magistrate Judge did not clearly err in concluding that the Court should dismiss them on sovereign immunity grounds. (*See* Doc. 4, #103–04). Generally, "an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver."

*Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) (quotation omitted). And "[t]he State of Ohio has not waived its sovereign immunity or consented to civil rights suits in federal court." *Jackson v. Ohio*, No. 25-3270, 2025 WL 3730297, at *1 (6th Cir. Dec. 23, 2025) (citation omitted). So any official-capacity claims for damages against Defendants here are a nonstarter.

But the result is different for Young's official-capacity injunctive-relief claims. Young may seek prospective injunctive relief against Defendants in their official capacities under *Ex parte Young*, 209 U.S. 123 (1908). *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417 (6th Cir. 2019). The R&R hints at this conclusion but does not expressly state it. (*See* Doc. 4, #103 ("To the extent plaintiff raises claims against any defendant in his or her official capacity, they must be dismissed as plaintiff seeks *monetary damages*." (emphasis added)). So the Court clarifies that Ohio's sovereign immunity does not bar Young's official-capacity injunctive-relief claims, to the extent that he is asserting any such claims.

As for Osbourne, the Court agrees that the R&R did not clearly err in finding that her brief interaction with Young soon after his return from the hospital is insufficient to sustain a deliberate-indifference claim. (*See* Doc. 4, #104–05). An Eighth Amendment deliberate-indifference claim requires proof of both "objective and subjective elements." *Pearson v. Mich. Dep't of Corrs.*, 170 F.4th 1027, 1037 (6th Cir. 2026) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Objectively, a medical condition must rise to a 'sufficiently serious level.'" *Id.* (quoting *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021)). "Subjectively, officials must know 'of the facts that

show the serious medical need,' and they 'must personally conclude that this need exists.'" *Id.* (citations omitted). Here, though, it appears that Osbourne's interactions with Young were limited to the time Young went without pain medication immediately after his return from the hospital. (Doc. 4, #104–05). Nothing about the nature of that interaction or Osbourne's reason for declining to administer medication—i.e., that Young first needed to see a doctor—suggests that the R&R clearly erred in concluding that Osbourne did not perceive a substantial risk of harm to Young. (*Id.*). So the Court adopts the R&R's conclusion that the deliberate-indifference claim against Osbourne fails on the subjective component. (*Id.*).

The Court also finds no clear error in the determination that Jewell's and Justice's involvement in the events alleged is too attenuated to sustain any § 1983 claim against those Defendants. (*Id.* at #105). "Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury." *Frenchko v. Monroe*, 160 F.4th 784, 800 (6th Cir. 2025) (first quoting *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020); and then citing *Rothhaupt v. Maiden*, 144 F. App'x 465, 471 (6th Cir. 2005)). But here, Young does not allege that "Jewell and Justice were involved in, or even knew about, the … constitutional violations raised in the complaint." (Doc. 4, #105 (citing Doc. 3, #84)). Finding no clear error in that analysis, the Court adopts the R&R's conclusion that Young's claims against those Defendants may not proceed as pleaded.

Finally, the Court agrees that Young's remaining claims may proceed. Though the Magistrate Judge did not spell out her reasoning for this conclusion, the Court provides a brief explanation.

*First*, Young's deliberate-indifference claim against David Conley and Goodman may proceed because Young alleges that those Defendants failed to provide urologist-prescribed treatment and did so knowingly. (*See* Doc. 4, #99–100). This gives rise to a plausible inference that the Defendants "personally conclude[d]" that Young had a serious medical need that they then ignored. *Pearson*, 170 F.4th at 1037. And there can be little doubt that Young's condition—kidney cancer—rises to a "sufficiently serious level." *Id.*

*Second*, Young's deliberate-indifference claim based on his unaddressed mental health issues against Chase Conley, Stidham, Hale, Nolan, Roe, and Gladman may proceed. A prisoner's "psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). And here, Young alleges facts giving rise to a plausible inference that each Defendant was actually aware of a serious risk of harm stemming from Young's unaddressed mental health issues. (*See* Doc. 4, #99–102).

*Third*, Young's conditions-of-confinement claim against Chase Conley, Stidham, Hale, Nolan, Roe, and Gladman may proceed. A "conditions-of-confinement claim follows similar objective and subjective elements as a medical-needs claim." *Pearson*, 170 F.4th at 1040–41. "Objectively, courts must ask whether the challenged

condition posed a 'sufficiently serious' risk of harm." *Id.* at 1041 (first quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); and then citing *Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981)). "Subjectively, a defendant must have known that the condition created the risk of injury." *Id.* (citing *Beck v. Hamblen Cnty.*, 969 F.3d 592, 600 (6th Cir. 2020)). Here, Young plausibly alleges that he was confined to a filthy, pepper spray-ridden cell in which he coughed and choked for a period of over 100 days. (*See* Doc. 4, #100–02). And he plausibly alleges that the Defendants were aware of a risk of injury stemming from those conditions. (*See id.*).

*Fourth*, Young's IIED claim against Chase Conley, David Conley, Goodman, Stidham, Hale, Nolan, Roe, and Gladman may proceed. The elements of an IIED claim under Ohio law are "(1) that the defendant intended to cause plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Johnson v. Mentor Harbor Yachting Club*, 279 N.E.3d 1232, 1246–47 (Ohio Ct. App. 2026) (quotation omitted). Without the benefit of briefing from the parties, and drawing all reasonable inferences in Young's favor as a pro se plaintiff, the Court concludes that Young has said enough to plausibly allege these elements against these Defendants. At bottom, Young asserts that each Defendant played some role in intentionally denying him treatment for a serious medical condition or played a role in intentionally confining him to a filthy, hazardous cell. (*See* Doc. 4, #99–102). Some of these Defendants even appear to have taunted Young. (*See id.* at #100 ("I don't care [about you], you're only hurting yourself, not

me" … "[A]ccept what we have or don't, it's your choice.")). Those facts could plausibly lead an "average member of the community" to exclaim, "Outrageous!" *Spitulski v. Bd. of Educ. of the Toledo City Sch. Dist.*, 121 N.E.3d 41, 57 (Ohio Ct. App. 2018). And even if Defendants did not specifically intend to inflict emotional distress, recklessness suffices. *Daly v. Certo*, 263 N.E.3d 939, 966 (Ohio Ct. App. 2025). Additionally, Young plausibly alleges that the conduct of these Defendants caused his emotional distress. Young traces the distress to feeling "ignored" by Defendants against a backdrop in which he was confined to a hazardous cell and required medical intervention. (Doc. 4, #99–101).

In sum, the Court finds no clear error in the Magistrate Judge's recommendation. Accordingly, the Court **ADOPTS** the R&R (Doc. 4), in its entirety. The Court also adopts the Magistrate Judge's recommendation that it certify under 28 U.S.C. § 1915(a) that any appeal of this opinion and order would not be taken in good faith, and therefore denies Young leave to appeal in forma pauperis.

## CONCLUSION

For the reasons above, the Court **ADOPTS** the R&R (Doc. 4), in its entirety. Consistent with that, the Court **DISMISSES** all official-capacity claims for damages asserted in Young's complaint and **DISMISSES** Osbourne, Justice, and Jewell as Defendants in this matter **WITHOUT PREJUDICE**. The Court further **CERTIFIES** under 28 U.S.C. § 1915(a) that any appeal of this opinion and order would not be taken in good faith and therefore denies Young leave to appeal in forma pauperis.

**SO ORDERED.**

August 4, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**